**Electronically Filed
Intermediate Court of Appeals
29880
29-JUN-2011
10:52 AM**

NO. 29880


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
HOA VAN HUYNH, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-CR. NO. 09-1-1011)


SUMMARY DISPOSITION ORDER
(By:  Nakamura, C.J., Fujise and Leonard, JJ.)

Defendant-Appellant Hoa Van Huynh (Huynh) appeals from the May 12, 2009 Judgment of Conviction and Sentence entered by the Family Court of the First Circuit (family court)[1] convicting him of one count of Harassment, a violation of Hawaii Revised Statutes (HRS) § 711-1106(1)(a) (Supp. 2010).[2]

On appeal, Huynh alleges three points of error: (1) admission of statements made by Huynh's wife to their neighbor because insufficient foundation for these statements was

---

[1]  The Honorable Darryl Y.C. Choy presided.

[2]  HRS § 711-1106(1)(a) provides, as it did at the time of this offense,

> (1)  A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:  (a)  Strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact.

(Formatting modified).  Huynh was charged with two counts of Harassment and acquitted on one count.

laid; (2) insufficient evidence, absent these statements, to support Huynh's conviction; and (3) insufficient findings to support Huynh's one-year sentence of probation.

I.

On November 23, 2008, Honolulu Police Department Officer Doreen Teramae (Officer Teramae) responded to a dispatch call reporting an argument at 2920 South King Street. She was the first officer on the scene, and upon her arrival, she noticed "a lot of commotion . . . located in Apartment 705." Officer Teramae saw several people in the room, including a female (complaining witness) who was crying and demonstrating a cable wire around her neck. Although complaining witness was speaking, Officer Teramae did not understand complaining witness, who spoke in another language later determined to be Vietnamese.

Through complaining witness's neighbor, also present on the scene, Officer Teramae learned that complaining witness claimed her husband placed the cable around her neck, dragged her to the ground with it when she attempted to intervene in his discipline of their son, and left the apartment.

Police took pictures of red marks on complaining witness's neck and the cable complaining witness used in her demonstration to police.

At trial, complaining witness testified through an interpreter that Huynh was her husband and on November 23, 2008, they lived in apartment 705 at "2920." That night, at approximately 10:00 p.m., she was washing dishes and Huynh was in another room with their son, when she heard Huynh yell at their son and heard "a noise." Upon entering the room, she saw her son on the floor and "crying from falling down." Complaining witness and Huynh argued and Huynh left the apartment. Complaining witness testified that Huynh did not put the cable around her neck. Complaining witness denied showing her neck to police officers or telling anyone that Huynh wrapped the cable around

her neck and pulled her down. The defense declined the opportunity to cross-examine complaining witness.

The prosecution also called Nick Nguyen (Nguyen), who testified that he lived on the third floor of the same apartment building as Huynh and on the night in question, could hear from his apartment the sound of multiple voices yelling, perhaps three times. Nguyen went to the seventh floor to see what was happening and found the police were already there and that complaining witness was standing in the kitchen of the apartment. Still standing outside of the apartment, Nguyen saw an officer inside trying unsuccessfully to ask complaining witness questions such as "How are you?" Nguyen testified that complaining witness looked nervous because the police were there and also observed that complaining witness was crying.

Nguyen testified that he grew up in Vietnam, is fluent in Vietnamese as his first language and had come to the United States in 1996, when he was twenty-three. When police asked if anyone could help translate, Nguyen volunteered.

Nguyen testified that he saw complaining witness about five minutes after he heard the yelling and was at the apartment about two minutes before the police asked for help in translating. When Nguyen spoke to complaining witness, she was still crying and emotional. Nguyen asked complaining witness what happened and she responded, "the husband attack her." At this juncture, the defense objected, "lack of foundation due to the fact that's a hearsay statement." After allowing the defense an opportunity to voir dire, the family court ruled the prosecution had established the elements of an excited utterance. Nguyen was then allowed to testify that complaining witness told him her husband had attacked her neck from behind with the cable.

Nguyen testified that complaining witness did not comply with requests to write her name or "anything else" for the police. Nguyen testified that by the time she decided not to write things down, complaining witness was calm.

Over a hearsay objection by the defense, Officer Teramae testified that she was the first officer on the scene and witnessed complaining witness crying and "demonstrat[ing] with a cable wire around her neck." Officer Teramae also testified that she observed redness to complaining witness's neck before complaining witness demonstrated with the cable. The pictures of complaining witness's neck and the cable were admitted into evidence over objection.

The family court found Huynh guilty of Harassment and sentenced Huynh to probation for one year, domestic violence intervention classes, and fees in the total amount of $105. Huynh brought this timely appeal.

II.

1. Huynh argues on appeal that complaining witness's statements to Nguyen should not have been admitted as they were hearsay and that a sufficient foundation for Nguyen as a competent interpreter was not laid. Admission of evidence over a hearsay objection is reviewed under the "right/wrong" standard. State v. Delos Santos, 124 Hawai'i 130, 136, 238 P.3d 162, 168 (2010).

a. Complaining witness's statement that Huynh "attacked her" was properly admitted as an excited utterance.[3]

---

[3] Hawaii Rules of Evidence (HRE) Rule 803 provides exceptions to the prohibition against admission of hearsay evidence contained in Rule 802, and provides, in pertinent part,

> **Rule 803  Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (b)  Other exceptions.
>
> . . . .
>
> (2)  Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

In <u>Delos Santos</u>, the Hawai'i Supreme Court analyzed similar statements. As in <u>Delos Santos</u>, Huynh contests only that complaining witness's statement to Nguyen was "made under the stress of excitement caused by [Huynh's] physical altercation with her." <u>Id.</u> at 137, 238 P.3d at 169.

> The "ultimate question in these cases is 'whether the statement was the result of reflective thought or whether it was rather a spontaneous reaction to the exciting event.'" [*State v. Machado*, 109 Hawai'i 445, 451, 127 P.3d 941, 947 (2006) (quoting *State v. Moore*, 82 Hawai'i 202, 219, 921 P.2d 122, 139 (1996)]. The "time span between the 'startling event' and the statement to be admitted as an excited utterance" is a factor in the determination, but a short time period is not a foundational prerequisite. *Id.* (quoting *Moore*, 82 Hawai'i at 221, 921 P.2d at 141). "Other factors that courts often look to in determining whether a statement was the product of excitement include . . . the nature of the event, the age of the declarant, the mental and physical condition of the declarant, the influences of intervening occurrences, and the nature and circumstances of the statement itself." *Id.* (citing *Moore*, 82 Hawai'i at 221, 921 P.2d at 141).

<u>Delos Santos</u>, 124 Hawai'i at 137, 238 P.3d at 169.

The court went on to summarize the evidence presented that supported the admission of the complaining witness's initial statement to the police:

> [T]he violent nature of the event, the short period of time between the incident and Officer Kubo's arrival, and the Complainant's physical and mental state support admitting the Complainant's initial statement as an excited utterance. There are three reasons that the Complainant's initial statement is admissible as an excited utterance while her later statements are not: 1) her initial statement does not summarize a longer conversation; 2) evidence that her statement was made in response to a police officer's question does not bar its admissibility as an excited utterance; and 3) the totality of the circumstances indicates that her statement was made under the stress of excitement.

<u>Delos Santos</u>, 124 Hawai'i at 140, 238 P.3d at 172 (internal citation omitted). Similarly, complaining witness's first statement that Huynh attacked her was made shortly after her argument with Huynh and while she was under the stress of excitement caused by the altercation with Huynh. She was still crying when Nguyen spoke to her, her statement did not seem to be a summary of a longer narrative, and it was apparently made in response to the first question posed to her in her own language.

Based on this record, we cannot say the family court erred in ruling this first statement qualified as an excited utterance.

Huynh challenges the foundation for "each of those statements" complaining witness made to Nguyen. However, we need not reach this question, as assuming, without deciding, that the balance of complaining witness's statements were improperly admitted, they were cumulative of this first statement and the observations of the police and Nguyen. Therefore, any error was harmless.

Complaining witness testified that, on the night in question, she had had an argument with her husband after which he left their apartment. Nguyen testified that he heard voices yelling and ascertained the sounds were coming from Huynh and complaining witness's apartment. He arrived about five minutes after the sounds, in time to see complaining witness demonstrating to police inside her apartment the use of a cable wire around her neck. Officer Teramae asked Nguyen to ask complaining witness what happened and when he did, complaining witness responded "husband attack her." Officer Teramae testified that she saw red marks on complaining witness's neck even before complaining witness conducted her demonstration with the cable. This evidence amply established the offense of Harassment and Huynh does not point to any subsequent statements made by complaining witness that materially added to these basic facts.

b. Huynh also argues that the family court erred in not requiring proof of the accuracy or reliability of Nguyen's translation of complaining witness's statements.[4] However, Huynh failed to object to Nguyen's testimony on this basis and

---

[4] Huynh also argues that the accuracy of Nguyen's translation of the officer's questions to complaining witness was also not established. However, Officer Teramae testified that she asked Nguyen to ask complaining witness only one question, "what happened." There is nothing in the record to indicate that Nguyen did not understand Officer Teramae's question, or that Nguyen could not translate such a basic question to complaining witness. Therefore, we reject this argument as without merit.

therefore has waived the objection on appeal. Moreover, Huynh had the opportunity to cross-examine both complaining witness and Nguyen, and specifically asked Nguyen, "Are there some words that are said in Vietnamese that you may not know the English translation?" Nguyen replied, "I think at that time any words [complaining witness] told me I know to translate to the officer." Huynh does not claim to be surprised by Nguyen's testimony, nor does he identify in what respect Nguyen's translation was incorrect. Huynh either had the opportunity to, or did cross-examine complaining witness and Nguyen. On this record, we cannot say the foundation for Nguyen's testimony was deficient.[5]

2. Sufficiency of the evidence. Huynh's sole basis for this challenge rests on his previous arguments leading to the exclusion of complaining witness's statements. However, as previously discussed, even when limited to complaining witness's initial response to Nguyen's question that her husband attacked her the remaining evidence was sufficient to support the family court's verdict of guilt for the offense of Harassment.

3. Finally, Huynh argues that the family court erred in imposing a one-year term of probation for this offense, where the family court did not make a finding of good cause. We agree. All sentences must comply with HRS chapter 706. HRS § 706-600 (1993). The offense of Harassment is a petty misdemeanor. HRS § 711-1106. Terms of probation for petty misdemeanors are for "six months . . . provided that up to one year may be imposed upon a finding of good cause." HRS § 706-623(1)(d) (Supp. 2006) (unchanged through 2009). As the record is devoid of such a finding by the family court, the sentence was contrary to the

---

[5] Nor does Huynh's reframing of this issue in his reply brief as a violation of his constitutional rights to confrontation/due process/fair trial change our analysis.

7

provisions of HRS chapter 706 and must be vacated and remanded for resentencing.

III.

Based on the foregoing, the conviction is affirmed. The Family Court of the First Circuit's judgment dated May 12, 2009 is vacated and the case is remanded to the family court for resentencing.

DATED: Honolulu, Hawai'i, June 29, 2011.

On the briefs:

Phyllis J. Hironaka,
Deputy Public Defender,
for Defendant-Appellant.

Anne K. Clarkin,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge